**Anna L. HIGGS, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary Department of Health and Human Services, Defendant–Appellee.**

**No. 87–6189.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1988.

Decided Oct. 28, 1988.

---

861

Gilbert Hale Nutt, Nutt and Mayer, Louisville, Terry E. Fox (argued), for plaintiff-appellant.

Joseph Whittle, U.S. Atty., Louisville, James H. Barr (argued), Terry Cushing, for defendant-appellee.

Before JONES and GUY, Circuit Judges; and HILLMAN, Chief District Judge.*

PER CURIAM.

This is an appeal from an order of the district court affirming appellee Secretary of Health and Human Services' final decision denying appellant Anna Higgs' claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Our review, like that of the district court, is limited to determining whether the Secretary's benefit denial is substantially supported by the factual record and based upon proper appli-

* The Honorable Douglas W. Hillman, Chief Judge, United States District Court, Western District of Michigan, sitting by designation.

cation of governing law. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir.1987) (per curiam). Employing this standard, we affirm.

## I.

Mrs. Higgs' public disability insurance coverage lapsed on June 30, 1979. *See* 42 U.S.C. § 423(c)(1). She is therefore entitled to benefits only if she became disabled on or before that date. 42 U.S.C. § 423(a)(1); *Slone v. Secretary of Health and Human Services*, 825 F.2d 1081, 1082 n. 1 (6th Cir.1987). On June 30, 1979 Mrs. Higgs was 48 years old, and had a sixth grade education. She had not worked successfully since she quit her job as a high school lunchroom cook five years before.

Mrs. Higgs filed her DIB application with the Social Security Administration (SSA) on August 12, 1983. In the application she claimed that her hypertension, heart abnormalities, and generalized arthritis had prevented her from working since April 22, 1974, the date she left her cook's position. SSA denied the claim on initial review and reconsideration, and Mrs. Higgs requested a hearing before an administrative law judge (ALJ).

At the ALJ hearing, Mrs. Higgs described her physical inactivity, which she attributed to the debilitating and progressive pain, weakness, and fatigue she had experienced since the mid-1970s. Her husband added corroborating testimony. The ALJ found this testimony credible, and awarded benefits.

The Appeals Council reviewed the ALJ's decision on its own motion, and reversed. The Council applied the sequential evaluation process found at 20 C.F.R. § 404.1520, and concluded at the second step of this analysis that the medical evidence alone showed Mrs. Higgs did not suffer from a severe impairment before her insurance cutoff date. Consequently, the Council denied benefits without further consideration of Mrs. Higgs' age, education, and experience.

Mrs. Higgs sought review in the district court, and the case was referred to a magistrate. After hearing oral argument, the magistrate issued a written report in which he recommended affirmance of the Appeals Council's decision. The district court accepted the recommendation over Mrs. Higgs' objection, and this appeal followed.

## II.

■ On appeal, Mrs. Higgs chiefly contends that the Appeals Council erroneously applied improper legal standards pertaining to the severity of her impairments. We disagree. She correctly points out that in this Circuit the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 185 (6th Cir.1986); *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 690–92 (6th Cir.1985); *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89–90 (6th Cir.1985). Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Farris*, 773 F.2d at 90.

Mrs. Higgs also correctly notes that this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis. *Cf. Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2298–2300, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring) (joining the "chorus of judicial criticism" directed at the Secretary's administration of the step two severity requirement).

■ In light of these legal principles and recent history, it is now plain that in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation. Nevertheless, Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, edu-

cation, and experience. *Yuckert,* 107 S.Ct. at 2294. In other words, as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint. *Farris,* 773 F.2d at 90 n. 1.

We conclude that this appeal presents the exceptional "totally groundless" claim properly dismissed on the medical evidence alone. There is nothing in the objective medical record credibly suggesting that Mrs. Higgs was significantly affected by any of her impairments on or before June 30, 1979. To begin with, the only document directly addressing the duration of her hypertension, an Audobon Hospital history and physical from January 1983, states that hypertension had existed "for the past year."

The record is similarly devoid of objective evidence documenting the existence of any significant heart problem before June 30, 1979. Mrs. Higgs' family doctor, Victor F. Duvall, M.D., saw her "off and on" after March 1974. Dr. Duvall testified at his deposition that Mrs. Higgs did complain of chest discomfort in the middle to late 1970s, but the doctor evidently felt that a full cardiac examination was not necessary. The routine tests that Dr. Duvall conducted, including electrocardiograms and a double mastery test, proved entirely normal. It is true that subsequent testing in 1981 and 1983 uncovered irregularities in Mrs. Higgs' heart. We have inspected these later results, however, and we find them minimally probative of Mrs. Higgs' condition in 1979. *Cf. Martonik v. Heckler,* 773 F.2d 236, 240–41 (8th Cir.1985) (evidence of medical condition after insurance cutoff must be considered to the extent it illuminates claimant's health before that date).

Mrs. Higgs' arthritis was first diagnosed and treated in 1971, although she continued to work until 1974. In that year she visited Frank W. Lehn, M.D., a rheumatologist. Dr. Lehn's examination revealed "mild" arthritis. No heart abnormalities appeared. Dr. Duvall also diagnosed arthritis after listening to Mrs. Higgs' description of her symptoms. In 1983, Audobon Hospital x-rays showed "slight" spinal degeneration and normal knee joints.

The mere diagnosis of arthritis, of course, says nothing about the severity of the condition. *Cf. Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988) (diagnosable impairment not necessarily disabling). The doctors' reports are silent regarding any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain. We have upheld findings of no severe impairment in cases involving similar records. *Cf. Crady v. Secretary of Health and Human Services,* 835 F.2d 617, 620–21 (6th Cir.1987) (per curiam) (no severe knee impairment where, among other factors, no evidence of restricted motion and only "minor" degeneration established by x-ray); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461, 464 (6th Cir.1987) (per curiam) (no severe back or leg impairment where pain severity not recorded, motion restriction unquantified, and x-rays revealed "mild" abnormalities).

In sum, we note that it is Mrs. Higgs' burden to prove the severity of her impairments. *Murphy v. Secretary of Health and Human Services,* 801 F.2d 182, 185 (6th Cir.1986). On this record, we cannot say that the Appeals Council erred in finding that Mrs. Higgs did not prove that she suffered from more than slightly or minimally impairing ailments before her DIB coverage lapsed.

In reaching this conclusion, we have considered Dr. Duvall's statement that Mrs. Higgs was disabled by her combined problems before June 30, 1979. Dr. Duvall's opinion, however, is not backed by objective clinical findings. In fact, Dr. Duvall admitted that he merely "assumed" that the heart condition existed before 1979. The Appeals Council was not required to defer to unsupported medical assumptions, even when made by a treating physician. *See, e.g., Miller v. Secretary of Health and Human Services,* 843 F.2d 221, 224 (6th Cir.1988) (per curiam); *Shelman v. Heckler,* 821 F.2d 316, 320–21 (6th Cir.1987). In fact, we have previously upheld an administrative finding of no severe impairment de-

spite conclusory disability opinions submitted by two treating physicians. *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir.1986).

The Council was likewise free to discount Mrs. Higgs' subjective descriptions of her symptoms. 42 U.S.C. § 423(d)(5)(A); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 780 (6th Cir.1987). Mrs. Higgs' statements are especially suspect in light of the fact that she admitted twice at her hearing that her heart problems did not develop until after 1979.

Given this clear record, the Appeals Council's decision to dismiss this case at the step two severity stage, on consideration of the medical evidence alone, was warranted by the facts and in accord with the law. It would have been a waste of effort and expense for the Secretary to investigate Mrs. Higgs' vocational profile.

### III.

 Mrs. Higgs also argues that the Appeals Council erred by failing to spell out in its opinion the weight it attached to her and her husband's testimony. We agree that the Council should have been more thorough and articulate in its decision. However, the Council's opinion states that it "considered the entire record which was before the administrative law judge, including the testimony at the hearing." The Council's lengthy discussion of the medical evidence makes it clear that it did not credit any testimony at variance with the objective record. That the Council did not explicitly say it would not accept hearing testimony at face value is not reversible error under the circumstances of this case. Mrs. Higgs received a full and fair explanation of the grounds for denial of her application. *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 591–92 (6th Cir.1987) (per curiam), *cert. denied,* ── U.S. ──, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988); *Townsend v. Secretary of Health and Human Services*, 762 F.2d 40, 44 (6th Cir.1985).

The remaining assignments of error are without merit. The judgment of the district court is AFFIRMED.