902 F.2d 1569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul PAQUETTE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-2124.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1990.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Paul Paquette, appeals from the denial of social security disability benefits. Paquette's principal argument is that the opinion of a treating physician provides substantial evidence in support of a conclusion that he was disabled. Assuming this to be true, it does not resolve this appeal, however, since our function on review is limited to ascertaining whether substantial evidence supports the decision of the Secretary, notwithstanding that substantial evidence may exist in support of claimant's contentions.
 
 
 2
 Upon a review of the record, we conclude that there is substantial evidence supporting the Secretary's determination and we affirm.
 
 I.
 
 3
 Paquette filed for disability benefits and supplemental security benefits on July 15, 1987. He claimed a disability onset date of June 15, 1980, the last day he worked. Claimant's insured status expired on December 31, 1985. Paquette was awarded supplemental security benefits as of July 15, 1987, but since such benefits are not retroactive, claimant must establish disability prior to the expiration of his insured status in order to be eligible for disability benefits. The administrative law judge (ALJ) concluded that claimant's condition had worsened over time and that as of December 31, 1985, he retained the residual functional capacity to do his past relevant work. This conclusion was based, in part, upon the testimony of a vocational expert (VE), who testified at the hearing.
 
 II.
 
 4
 Paquette was 55 years old at the time his insured status expired. He had worked continuously as a truck driver from 1964 to September 1980 when he was laid off. Claimant admits he would have continued working but for the lay-off. In his initial application for disability benefits, Paquette claimed to be suffering from degenerative arthritis in both feet and ankles, cardiovascular problems, and high blood pressure. (App. 54). It appears that he has refined this claim to be one of pain emanating from his foot, leg, and chest.
 
 
 5
 Claimant's foot problems began in 1950 when his left foot was crushed, leading to the amputation of his big toe. In 1968, Paquette's right foot was crushed and he lost bone in that foot and toes. He claimed that he had pain every day since 1980 or 1981, but that he first felt he was unable to do any work at all in late 1984 or early 1985. Paquette testified that, until late 1984, he did house and yard work, read, and watched television. He did all the yard work and gardening around the house until early 1985, after which time he continued to do light gardening such as weeding. Paquette did housework, helped with the cooking, and visited relatives. He was able to drive without restrictions, and he drove about a dozen times each week.
 
 
 6
 Viewing the evidence relative to Paquette's day-to-day activities from 1980 to 1985 as a whole, we are convinced that it supports the Secretary's conclusion. We now turn to the medical evidence.
 
 
 7
 There are really two sets of medical evidence in the record. The first set begins with claimant's foot injuries and ends in January 1983 with the report of Dr. Finkle, a board-certified orthopedist. It was Dr. Finkle's conclusion that Paquette had a complete and normal range of motion in his knees, feet, and ankles and that there was no evidence of degenerative osteoarthritic change or osteoporosis. Dr. Finkle discerned no physical or radiographic findings to suggest that Paquette was unable to perform his normal daily physical activity or to suggest that he was unable to perform his normal work duties. He was "of the very firm opinion that the patient has no evidence of orthopedic physical disability or functional impairment." (App. 153). The reports from the other three physicians who examined Paquette prior to Dr. Finkle's examination were consistent with Dr. Finkle's findings. Each of these doctors also opined that Paquette could perform work that was consistent with light work activities. From the date of Dr. Finkle's report in January 1983 until claimant's insured status expired in December 1985, there is no further objective or clinical evidence in the record. Clearly this medical evidence would not support a finding of disability.
 
 
 8
 The second set of medical evidence does not begin until July 1987. A July 1987 report from Dr. Sitto indicates that he treated Paquette for hypertension and ischemic heart disease beginning in April 1985, but the report contains no specific findings for the period prior to December 31, 1985. Moreover, Dr. Sitto also indicated that the foot problems were not severe at that time. He found that Paquette was able to walk, squat, climb stairs, and get on and off the examination table. There was no swelling, redness, or heat associated with Paquette's feet. The gait was normal and he did not need an ambulatory aid.
 
 
 9
 Paquette's main reliance is on the report of Dr. McGill and Dr. Hepke who practiced together. Dr. McGill was a board-certified physiatrist.[1] The office notes of Drs. Hepke and McGill indicate that, from July 1987 to May 1988, they treated Paquette for complaints of periodic pain in his feet, knee, and lumbosacral spine. Paquette also complained of chest pain and, in February 1988, he was referred to a cardiologist for a cardiac catheterization. In March 1988, Dr. Hepke and Dr. McGill noted that the cardiac catheterization was negative for coronary obstruction. In May 1988, their last entry, Drs. Hepke and McGill noted a flare-up of knee pain brought on by kneeling while gardening, an activity that aggravated Paquette's lumbar myofascitis.
 
 
 10
 At the request of claimant's attorney, Dr. McGill furnished a report in June 1988 which diagnosed degenerative arthritis involving the feet, knees and hips; arteriolosclerotic heart disease; deafness in the left ear; and intermittent edema of both lower extremities. Dr. McGill opined that Paquette had been "continuously disabled by the above diagnosis since 1984" (App. 156), but there were no clinical or laboratory findings contained in the report that described Paquette's condition prior to the date of that report. Dr. McGill stated that Paquette had been under his care "intermittently since 1948" (App. 156), but explained that prior to 1950, Paquette was seen primarily for upper respiratory-type infections. There are no reports in the record from Dr. McGill for the period from June 1980, the alleged onset date, to December 31, 1985, the date claimant's insured status expired.
 
 
 11
 Paquette urges that Dr. McGill's opinions should be accorded greater deference as those of a treating physician. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). It does not appear to us, however, that Dr. McGill really was treating claimant during the relevant period. Dr. McGill's reports also made it clear that after Paquette's foot injuries, Paquette was not under his care but under the care of orthopedic specialists and Paquette's internist, Dr. Sitto. Paquette admitted that he did not begin treating with Dr. Hepke and Dr. McGill for arthritis and rehabilitation until March or April of 1987. Paquette also estimated that he began treatment with Dr. Sitto for his blood pressure and heart in 1985. Post-insured status evidence may be considered only if it sheds light on a claimant's condition during the insured period. See, e.g., Johnson v. Secretary of Health & Human Services, 679 F.2d 605 (6th Cir.1982). As we indicated in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir.1989), evidence post-dating the expiration of a claimant's insured status is only minimally probative.
 
 
 12
 The medical evidence of record for the period of 1980 to 1985 provides substantial support for the Secretary's conclusion that Paquette was not disabled, and the later conclusory opinion of Dr. McGill is not sufficient to offset this evidence.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Physiatry is defined as "that branch of medicine which deals with the diagnosis, treatment, and prevention of disease with the aid of physical agents, such as light, heat, cold, water, and electricity, or with mechanical apparatus; physical medicine."