931 F.2d 893
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roy T. BALL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-6059.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Roy T. Ball ("Ball") appeals from the district court's June 12, 1990, order affirming the Secretary of Health and Human Services' (the "Secretary") denial of social security disability benefits. Ball argues that the Secretary's decision is not supported by substantial evidence and that the Secretary did not apply the proper standard to evaluate Ball's claim. For the following reasons, we AFFIRM the district court's decision.
 
 I.
 A.
 
 2
 Ball was fifty-seven years old at the time his insured status expired on December 31, 1984.[1] He had worked as the owner and operator of a gas station, a painter, a truck driver, and, most recently, as a gas station attendant. He experienced a myocardial infarction in 1984 and has discoid lupus. On May 22, 1984, Ball was admitted to the hospital and diagnosed as experiencing an acute posterior wall myocardial infarction. His physician, Dr. Samuel Stever, noted a history of discoid lupus and chronic obstructive pulmonary disease secondary to smoking.
 
 
 3
 On July 18, 1984, Ball underwent a treadmill test at Vanderbilt University Medical Center. He was able to exercise for nine minutes, and although the test was stopped because of his fatigue, he reached in excess of eighty-five percent of his predicted maximum heart rate. On August 1, 1984, Vanderbilt University Medical Center administered a thallium stress test. Ball demonstrated excellent exercise tolerance and although an EEG was probably positive for ischemia, Ball exercised for twelve minutes and the test was clinically negative for ischemia. On September 13, 1984, a cardiac catheterization was performed at D.D. Eisenhower AMC by Dr. Robert Leverton ("Dr. Leverton"). It demonstrated single vessel disease with total occlusion of the distal circumflex. Ball complained of chest pain which Dr. Leverton concluded might have been angina. Dr. Leverton further opined that Ball had an excellent prognosis and that he was able to resume normal activities.
 
 
 4
 On December 2, 1986, Ball was examined at the Trover Clinic. Dr. Wallace Alexander ("Dr. Alexander") indicated that as a result of Ball's history of a prior heart attack, the claimant would be limited in his ability to lift, walk, and stand. Dr. Alexander, however, failed to enumerate any specific limitations. He described the limitation as "undetermined." Record at 168-70.
 
 
 5
 On August 24, 1987, Dr. B.E. Dossett, Jr. ("Dr. Dossett"), a cardiovascular specialist, responded to interrogatories after reviewing the record. Dr. Dossett concluded that Ball's history of lupus was not a particularly severe problem and that it did not significantly contribute to the claimant's allegation of disability. He noted that Ball's cardiovascular disease required further evaluation to determine any precise limitations. He also noted that claimant had had an uneventful recovery from his myocardial infarction and that the testing performed had not demonstrated any severe ischemia. Dr. Dossett concluded that the claimant's impairments did not, either singly or in combination, meet or equal the requirements of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1 (1990). He concluded that Ball's only problem was heart disease and that the heart disease required further objective testing.
 
 
 6
 James Adams ("Adams"), a vocational consultant, evaluated the record. Adams reviewed Ball's education and work history. He concluded that Ball's prior work had varied from medium to heavy and unskilled to semi-skilled. Adams did not mention Ball's jobs as the owner and attendant of a gas station. After evaluating the medical evidence, Adams concluded that the claimant was unable to engage in any substantial gainful activity. This opinion was apparently based upon Dr. Alexander's report and upon Adams' reading of medical reference books. There is no indication that Adams conducted any testing of Ball or that he interviewed him.
 
 B.
 
 7
 On August 7, 1986, Ball filed an application for disability and disability insurance benefits. In a vocational report dated October 5, 1986, Ball reported that his most recent work was as a cash register operator at a gas station. He described his work as "I set [sic] in a chair and took money and filled out credit cards in a gas station." Record at 106. This application for benefits was denied initially and upon reconsideration. On July 21, 1987, a hearing was held before an administrative law judge ("ALJ"). At the hearing, Ball testified that since his heart attack in 1984, he had experienced chest pain ranging in frequency from every day to once every couple of weeks. He testified that he would take nitroglycerine when necessary, but that he had not taken it in quite a while. In addition to his heart condition, Ball testified that his lupus prevented exposure to the sun. He also testified, however, that he was able to drive short distances, cut his grass, and occasionally fish. Id. at 211-12. He further testified that he could probably lift a table, although not on a sustained basis. Id. at 217. On October 2, 1987, after a hearing, the ALJ issued a decision denying Ball's application. On January 29, 1988, the Appeals Council denied Ball's request for review. This was the final decision of the Secretary.
 
 
 8
 Ball filed a civil action, pursuant to 42 U.S.C. Sec. 405(g), for judicial review of the Secretary's decision. On April 29, 1988, upon the Secretary's motion, the district court remanded Ball's case for supplemental proceedings to determine if Ball earned wages in 1983 and 1984. If Ball had earned wages during those years he would have extended his insured status. With such an extension, Ball would be entitled to benefits even if his ailments were not disabling until after December 1984. Pursuant to the district court's order, the Appeals Council remanded the case to an ALJ for supplemental proceedings which were held on December 12, 1988.
 
 
 9
 At the supplemental hearing, Ball's testimony concerning his heart and lupus impairments was similar to his testimony in the first hearing. He indicated that he usually sat at the cash register, but occasionally would have to pump gas if there were no other attendants at the station. Record at 68. Ball further testified that he did not frequently experience shortness of breath, but that breathing problems developed with extensive walking. Id. at 48.
 
 
 10
 Dr. William Houser ("Dr. Houser"), a medical advisor specializing in internal medicine and critical care, testified at the supplemental hearing. Dr. Houser testified that the 1984 exercise test results were normal. After twelve minutes of testing, Ball exercised up to thirteen to fourteen METS. Dr. Houser opined that Ball's fatigue was largely a product of his sedentary lifestyle and not related to any specific medical condition. Dr. Houser also testified that Ball's history of discoid lupus would limit him to work which did not require extensive exposure to the sun. Dr. Houser concluded that Ball would be capable of performing the physical demands of sedentary and light work. The ALJ asked Dr. Houser if Ball would be capable of performing his former work as a gas station attendant. Dr. Houser testified that he could see no reason why Ball could not do the work as the claimant himself had described.
 
 
 11
 On February 27, 1989, the ALJ issued a recommended decision. The ALJ determined that the record did not support a finding that Ball's insured status extended beyond December 31, 1984, and that prior to that date, Ball retained the residual functional capacity to perform his former work as a gas station attendant. On July 24, 1989, the Appeals Council adopted the ALJ's recommendation.
 
 
 12
 The case was redocketed in the district court and on March 28, 1990, a magistrate recommended that the Secretary's decision be affirmed. The district court adopted the magistrate's recommendation over Ball's objections on June 14, 1990.
 
 II.
 A.
 1.
 
 13
 We review the Secretary's decision only to determine whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. Sec. 405(g); McCormick v. Secretary of Health & Human Serv., 861 F.2d 998, 1001 (6th Cir.1988). As the claimant, Ball bears the ultimate burden of proof on the issue of disability and he bears the burden of going forward with evidence unless he establishes his inability to return to his former occupation. Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984).
 
 
 14
 In order to establish entitlement to disability insurance benefits under title II of the Social Security Act, Ball must establish that he became disabled prior to the expiration of his insured status. 42 U.S.C. Sec. 423(a), (c); Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988). Ball will not establish disability if he is capable of performing past relevant work. 20 C.F.R. Sec. 404.1560(b). It is not contested on appeal that Ball's insured status expired on December 31, 1984.
 
 
 15
 The medical evidence in the record provides a substantial basis for the Secretary to conclude that Ball could perform his prior work as a gas station attendant as he described it. We therefore conclude that the district court's denial of disability benefits was proper.
 
 
 16
 The exercise tests indicated Ball could perform a fair amount of exertion. Record at 131. Dr. Leverton opined that Ball was able to resume normal activity after his myocardial infarction. Id. at 149. Two medical advisors support the Secretary's conclusion. Dr. Dossett opined that testing had failed to demonstrate any significant ischemia and that Ball's lupus was not a particularly severe problem. Id. at 177. Dr. Houser testified that there was a substantial chance Ball's complaints of fatigue were related to inactivity rather than his medical problems and would improve with conditioning. Record at 62, 68. Dr. Houser, who had reviewed all of the medical records, heard Ball describe his former job as a gas station attendant and testified that he could see no reason why claimant could not perform that work despite all of the ailments described. Id. at 64. Dr. Houser did testify that it would be inadvisable for Ball to work at a job which required extensive exposure to the sun, but the job as described by the plaintiff did not require significant sun exposure. Id. at 63.
 
 
 17
 Ball contends that Dr. Houser's testimony was contradicted by Dr. Alexander asserting that Dr. Alexander found that Ball could do no lifting. We do not agree with this contention. Although Dr. Alexander recommended no lifting, he stated that Ball's ability to lift was undetermined. Id. at 167-68. Dr. Alexander did not treat Ball. He merely examined Ball on one occasion, at the request of Ball's attorney. Dr. Alexander's conclusion is therefore not entitled to any greater weight than the conclusions of other examining physicians. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985).
 
 
 18
 Although Adams, Ball's vocational expert, opined that Ball could not work, his conclusion was based upon the assertion that Dr. Alexander had found that Ball could do no lifting. As noted above, Dr. Alexander made no such finding. Furthermore, Adams did not consider Ball's ability to perform his previous job of gas station attendant. He only mentioned other jobs that plaintiff had performed. Record at 184-85.
 
 
 19
 Additional evidence that supports the Secretary's conclusion is Ball's failure to seek continued treatment. The ALJ properly considered this factor in determining Ball was not disabled. See Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir.1986). There is no indication in the record that Ball sought any medical treatment after his post heart attack release from the hospital. He also was not frequently taking the medication for his pain, nitroglycerine.
 
 
 20
 We conclude that the record provides substantial evidence to support the Secretary's finding of no disability.
 
 2.
 
 21
 Ball makes several objections to the procedures in this case. He argues that the ALJ failed to adequately develop the record, relying on Lashley v. Secretary of Health & Human Serv., 708 F.2d 1048 (6th Cir.1983). Appellant's Brief at 9-10. We find Ball's claim unpersuasive. The heightened duty for the ALJ to develop the record for the claimant applies only to cases where a claimant is not represented by counsel. Id. at 1051-52. In the instant case, Ball was represented at both hearings by an attorney. Ball's claim that the ALJ erred by not further developing the record is therefore meritless.
 
 
 22
 Ball further argues that the Secretary erred by failing to order a consultative examination to evaluate the limitations imposed by Ball's pulmonary and back impairments. We find this claim also meritless. The claimant bears the burden of providing a complete record and the Secretary is not required to order consultative examinations unless they are necessary for the ALJ to make a disability determination. Landsaw v. Secretary of Health & Human Serv., 803 F.2d 211, 214 (6th Cir.1986). The claimant did not allege disability resulting from pulmonary or musculoskeletal impairments, and the record does not indicate that these alleged impairments affected his residual functional capacity prior to December 1984. Therefore further consultative examinations were not necessary and the ALJ did not err in not ordering them.
 
 
 23
 Ball also argues that remand is necessary because the ALJ found neither the pulmonary nor the musculoskeletal impairments severe. We held in Maziarz v. Secretary of Health & Human Serv., 837 F.2d 240 (6th Cir.1987), that where the Secretary finds that a claimant has at least one "severe" impairment, and therefore continues the sequential evaluation process, it is not error for the Secretary to find other impairments not severe. Id. at 244. We therefore find no error in the ALJ's failure to find the pulmonary and musculoskeletal impairments "severe."
 
 
 24
 Ball argues that his work as a gas station attendant was only for four months and should not be considered vocationally relevant. Appellant's Brief at 11. The regulations define past relevant work, however, as any job performed in the past fifteen years for a period long enough to acquire proficiency. 20 C.F.R. Sec. 404.1565(a) (1990). There is no indication that four months was insufficient for Ball to master the requirements of the gas station attendant job. We therefore find that it was proper to consider the gas station attendant position as past relevant work.
 
 
 25
 Ball argues that since the Dictionary of Occupational Titles ("DOT") defines the position of gas station attendant as medium or light, it was improper to find that he could perform the exertional demands of the job. We have held that the Secretary must look at a claimant's description of his or her former work, not just the DOT's description. Carter v. Secretary of Health & Human Serv., 834 F.2d 97, 98 (6th Cir.1987). As noted above, Ball could perform his past work as described by himself. Therefore we find that the Secretary did not error in finding Ball capable of the gas station attendant position he had performed, despite the definition in the DOT.
 
 
 26
 We find that the Secretary properly reached a conclusion of no disability despite the numerous procedural errors alleged by Ball.
 
 B.
 
 27
 Ball argues that the Secretary failed to properly consider his subjective complaints of pain and weakness in accordance with Social Security Ruling 88-13, Title II and XVI: Evaluation of Pain and Other Symptoms (1988). In order for pain or other subjective complaints to be considered disabling, there must be medical evidence of an underlying impairment and objective evidence to confirm the severity of the alleged pain arising from the impairment or objective evidence that the impairment is of a severity which could reasonably be expected to give rise to the alleged pain. McCormick, 861 F.2d at 1002-03; Duncan v. Secretary of Health & Human Serv., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 28
 The Secretary determined that Ball's subjective complaints were only credible to the extent that heavy exertion would have been precluded on a regular and sustained basis. Record at 198. The objective evidence does not support a condition that could reasonably be expected to give rise to the alleged disabling pain. Two physicians concluded that Ball fully recovered. One indicated that residual pain is not the result of Ball's heart problems but substantially caused by a lack of conditioning which would be alleviated by leading a less sedentary life. Ball's exercise test results were normal. Ball takes nitroglycerine only infrequently and he has not sought continuing medical treatment. He testified that he rarely experiences shortness of breath. Id. at 48. Accordingly, we conclude the record clearly supports the Secretary's finding that, despite Ball's claims, Ball did not have pain or other subjective difficulties that were disabling.
 
 III.
 
 29
 For the foregoing reasons, we AFFIRM the June 12, 1990, order of the Honorable Edward H. Johnstone, Chief Judge of the United States District Court for the Western District of Kentucky, which denied benefits and dismissed this action.
 
 
 
 [1]
 The possibility that Ball's insured status extended beyond 1984 was explored in a supplemental hearing before an ALJ, but was rejected. See discussion below