67 F.3d 299
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David BYRD, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-5976.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1995.
 
 Before: KRUPANSKY, MILBURN, and NELSON, Circuit Judges
 MILBURN, Circuit Judge.
 
 
 1
 Claimant David A. Byrd appeals the district court's grant of summary judgment, affirming the Secretary's denial of his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. Sec. 416(i), 423(d). On appeal, the issue is whether the Secretary's decision finding that claimant was not disabled prior to December 31, 1990, is supported by substantial evidence. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant filed an application for disability insurance benefits ("DIB") on March 10, 1988. R. 1, 61, 62. He filed a second application for disability insurance benefits on April 30, 1991, alleging that he became disabled on September 30, 1986. The state (Tennessee) disability determination agency denied the application initially and on reconsideration.
 
 
 3
 Claimant then requested a hearing before an administrative law judge ("ALJ"). At that time, the ALJ issued an order remanding the case to the state agency for further consideration. Subsequently, the state agency affirmed its prior decision.
 
 
 4
 Claimant filed a second request for a hearing before an ALJ on May 27, 1992. Pursuant to this request, a hearing was held on November 30, 1992.
 
 
 5
 Thereafter, on March 8, 1993, the ALJ issued a decision denying the claim for DIB benefits. The ALJ found that claimant's public disability insurance coverage ended on December 30, 1991. R. 17. The ALJ further found that
 
 
 6
 on and prior to December 31, 1990, ... claimant had the residual functional capacity to perform his past relevant work activity. Consequently, it must be found that the claimant was not disabled within the meaning of the Social Security Act on and prior to December 31, 1990.
 
 
 7
 R. 16. The ALJ stated that he was persuaded that
 
 
 8
 the evidence is insufficient to establish any impairment or combination of impairments which could reasonably be expected to cause pain or other symptoms of the severity, frequency or duration to preclude medium work activity, including the claimant's past relevant work, on or prior to December 31, 1990, the date the claimant was last insured for disability insurance benefits.
 
 R. 18-19. Finally, the ALJ acknowledged
 
 9
 that although the claimant's combination of impairments may currently constitute disability, prior to December 31, 1990, he had no evidence of a severe emotional impairment and he retained the residual functional capacity for medium work activity.
 
 
 10
 R. 19. The ALJ's decision became the final decision of the Secretary on August 19, 1993, when the Appeals Council denied claimant's request for review of the ALJ's decision.
 
 
 11
 Thereafter, claimant filed a complaint in the district court under 42 U.S.C. Sec. 405(g) seeking judicial review of the Secretary's final decision. On June 24, 1994, the district court issued an order granting summary judgment in favor of the Secretary, finding that based on the record as a whole, substantial evidence supported the ALJ's finding that claimant had failed to establish that he was totally disabled prior to the expiration of his insured status. This timely appeal followed.
 
 B.
 
 12
 Claimant was born on September 28, 1938, and was 54 years of age at the time of the administrative hearing. He dropped out of school after the tenth grade, but subsequently completed his high school education. R. 42.
 
 
 13
 Because the medical evidence of record has been thoroughly summarized in the decisions of the ALJ, the Appeals Council, and the district court, it has not been repeated here. We will refer to the evidence where necessary in our discussion of the issues.
 
 
 14
 Claimant testified that he worked as a bartender and operated a package store from 1958 until 1985. He also operated a restaurant along with the package store, but stopped running the restaurant sometime in the early 1970s. Claimant stated that he stopped working and sold his package store because he was no longer able to run it. Claimant testified that running the package store involved standing for 12 to 14 hours per day and involved lifting and carrying items, such as cases of beer, which he estimated weighed between thirty and forty pounds each.
 
 
 15
 Claimant stated that he has soreness in his neck and severe headaches. He stated that his neck pain was constant. He also stated that he had arthritic pain in his feet, legs, elbows, shoulder, and right hips, which is exacerbated by cold weather and rain.
 
 
 16
 According to claimant he cannot sit for more than an hour at a time without experiencing discomfort. He also said that he cannot stand for more than 30 or 45 minutes at a time because his knees give out. Claimant also said that he needs to rest either four or five times daily for 30 minutes to one hour each time.
 
 
 17
 He takes four Darvocet pills daily for pain, and occasionally takes a Tylenol. Claimant stated that he cannot take anti-inflammatory drugs for his arthritis because he is allergic to them. He also takes medicine for his high blood pressure and nerves. Claimant has four or five drinks daily to help him deal with the pain. He admitted that he had a problem with alcoholism in the past, but stated that he drinks much less now.
 
 
 18
 Claimant testified that he has trouble sleeping and has nightmares. He has crying spells once a week and also has problems with his concentration.
 
 
 19
 Claimant takes care of his personal needs, although his wife occasionally helps him bathe and dress. He attends church, but confines most of his activity to his home due to his nerves. He reads, watches television, and sometimes runs the vacuum cleaner and dishwasher. He also drives an automobile, but only on trips of a very few miles.
 
 
 20
 Finally, claimant stated that during the five year period from 1987 to 1992 his condition "just got worse all the time, in fact, it's gotten a lot worse just in the last year." R. 59. He also stated that, "I've been a lot more nervous than I used to be and more depressed than I was," R. 59, and he stated that the reason why he thought he could not work was "mostly my nerves," R. 60.
 
 II.
 A.
 
 21
 We review the district court's grant of summary judgment in a social security case de novo. Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1069 (6th Cir.1992); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990). We must affirm a grant of summary judgment in favor of the Secretary if the Secretary's decision is supported by substantial evidence. Crum, 921 F.2d at 644.
 
 
 22
 Moreover, pursuant to 42 U.S.C. Sec. 405(g) our review of the Secretary's decision is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards in reaching her conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert denied, 461 U.S. 957 (1983). We do not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 23
 In determining whether the Secretary's factual findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. See Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1173 (6th Cir.1990). If supported by substantial evidence, the Secretary's decision must be affirmed even if a reviewing court would decide the matter differently, see Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, see Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc). Furthermore, it is the social security disability claimant who bears the ultimate burden of proof on the issue of disability. See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984).
 
 
 24
 The Secretary has promulgated regulations creating a five-step evaluation process for Social Security disability claims. This case was decided at step four of the five-step evaluation process.
 
 B.
 
 25
 Claimant argues that the Secretary's finding that he was not disabled on or before December 31, 1990, the date his DIB coverage lapsed, is not supported by substantial evidence. A claimant is entitled to benefits only if he became disabled on or before the date his public insurance disability coverage lapsed. Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988) (per curiam).
 
 
 26
 Thus, Claimant bears the burden of establishing that he became disabled on or before December 31, 1990. The ALJ found that claimant had not satisfied his burden because the evidence showed that as of December 31, 1990, claimant retained the residual functional capacity to perform his past relevant work as a package store operator.
 
 
 27
 Although the evidence of record shows that claimant's condition progressively worsened after December 31, 1990, and by the time of the administrative hearing in November 1992, he was clearly totally disabled, substantial evidence supports the ALJ's finding that claimant's impairments failed to reach the severity required for a finding of disability and did not prevent claimant from performing his past relevant work on or before December 31, 1990.
 
 
 28
 Claimant asserts that the ALJ should have found that he was unable to work prior to the expiration of his insured status based upon Dr. McKnight's August 1991 evaluation of claimant in which he stated "that [claimant's] current disabilities began on or about 1986 when he left his regular employment." R. 205. He also asserts that the ALJ erred in evaluating his subjective complaints of pain and that the ALJ erred in evaluating impairments, namely, arthritis, anxiety, and depression, under the listings of impairments, 20 C.F.R. Part 404, Subpart P, Appendix 2.
 
 
 29
 The ultimate decision as to whether a claimant has satisfied his burden of establishing that he is disabled rests with the ALJ. Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1070 (6th Cir.1992). Here, the question is not so much whether claimant is disabled; it is whether he satisfied his burden of establishing that the onset date of his disability was on or before December 31, 1990.
 
 
 30
 "[T]he onset date of progressively disabling conditions may be inferred from the claimant's medical history and symptomatology." Besaw v. Secretary of Health and Human Services, 966 F.2d 1028, 1030 (6th Cir.1992) (per curiam) (citing Blankenship v. Bowen, 874 F.2d 1116, 1122 (6th Cir.1989). Moreover, "the Secretary is not required to disprove an earlier onset date if his determination regarding the onset of the disability is supported by substantial evidence." Id. (citing Blankenship, 874 F.2d at 1121).
 
 
 31
 The "[f]actors relevant to the determination of disability onset include the individual's allegations, the work history, and the medical evidence." Blankenship, 874 F.2d at 1122. "[T]he individual's allegations or the date of work stoppage is significant in determining onset only if it is inconsistent with the severity of the condition(s) shown by the medical evidence." Id.
 
 
 32
 None of the physicians who examined claimant prior to December 31, 1990, ever stated that he was disabled. Moreover, although claimant complained of being nervous prior to December 31, 1990, and was prescribed medication for his nerves, no diagnosis of a significant mental impairment was made prior to December 31, 1990.
 
 
 33
 However, Dr. McKnight who evaluated claimant in August 1991, approximately eight months after the expiration of his insured status, and diagnosed a syndrome of depression and insomnia stated that those conditions had "been present and becoming progressively more severe since 1986." R. 204. He also opined "that [claimant's] current disabilities began on or about 1986 when he left his regular employment." R. 205. Nevertheless, Dr. McKnight never stated when he thought claimant's mental impairments became severe enough, either standing alone or in combination with his physical impairments, to become disabling.
 
 
 34
 Furthermore, Dr. McKnight's conclusion that claimant's disabilities began when he stopped working is highly speculative as it is not supported by the other evidence of record.[1] First, the mere diagnosis of a condition says nothing about its severity. Higgs, 880 F.2d at 863. In this regard, the ALJ stated that the five psychiatric evaluations of record
 
 
 35
 were conducted in August 1991, January 1992, April 1992, August 1992 and September 1992. The claimant did not seek psychiatric treatment until January 1992, more than one year after he was last insured for disability insurance benefits. While these psychiatric evaluations establish significant depression currently, a longitudinal assessment of the claimant's condition is not persuasive that the claimant experienced severe psychiatric symptoms prior to December 31, 1990. There is no complaint by the claimant of psychiatric symptoms or observations by his treating internist of psychiatric symptoms prior to December 31, 1990.
 
 
 36
 R. 19 (emphasis added).
 
 
 37
 Second, the ALJ's treatment of the evidence concerning claimant's nonexertional limitations is consistent with claimant's own testimony. Although claimant asserts that the ALJ erred in evaluating his subjective complaints of pain, we disagree. "[I]t is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability." King v. Heckler, 742 F.2d 968, 974 (6th Cir.1984). Subjective complaints of pain are reviewed under the standard set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986). Under the Duncan standard
 
 
 38
 [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.
 
 
 39
 Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920-21 (6th Cir.1987) (per curiam). The ALJ found:
 
 
 40
 Based on a careful review of the total record, ... the objective findings on physical examinations and diagnostic tests; the claimant's reported symptoms to his physician; the minimal medication required; the lack of aggressive treatment measures; and the lack of reported symptoms by the claimant to his physician are persuasive evidence that the claimant was not experiencing pain or other symptoms of the severity, frequency or duration as to preclude the performance of his past relevant work activity for any continuous period of 12 months on and prior to December 31, 1990. These facts considered in combination with the previously described inconsistencies in the claimant's statements preclude giving full weight to his testimony.
 
 
 41
 R. 20-21. We agree. Although claimant has an osteoarthritic condition, an objectively documented medical condition, there is evidence in the record which supports the ALJ's conclusion not to give full weight to claimant's testimony.
 
 
 42
 First, despite his osteoarthritis of the spine, claimant has never been hospitalized and never required surgery. Second, the evidence showed that claimant refused to follow recommended conservative treatment, wearing a cervical collar, until sometime after the expiration of his insured status. Indeed, Dr. Rardin who examined claimant in January 1991, less than a month after the expiration of his insured status, recommended the use of a cervical collar and possibly a period of home traction. Most significantly, although Dr. Rardin diagnosed osteoarthritis, he did not state that claimant was disabled. As the ALJ noted, this does not enhance claimant's credibility. Further, there is evidence as late as September 1988, that claimant was mowing his lawn prior to the time he went to the hospital, even though he claimed that the was disabled at the time he stopped working in 1985. Further, there is no evidence that claimant sought psychiatric treatment for his depression prior to January 1992.
 
 
 43
 Claimant did, however, testify in November 1992 that his condition had "gotten a lot work just in the last year," R. 59, and that he had "been a lot more nervous than I used to be and more depressed than I was," R. 59. This testimony, is also consistent with Dr. Garland's statement that claimant's condition was worse when he saw him in March 1993, than when he had previously seen him. Therefore, we conclude that the ALJ did not err in not giving full weight to claimant's testimony concerning his subjective complaints of disabling pain. Further, the ALJ did not err when he found that claimant's testimony was not a basis for finding that claimant was not disabled prior to December 31, 1990.
 
 
 44
 Moreover, based upon the examination of Dr. Rardin, which was performed less than a month after the expiration of claimant's insured status, and the assessment of claimant's residual functional capacity performed by Dr. Bass, it was reasonable to find that claimant had the residual functional capacity to perform his past relevant work as a package store operator. The evidence of record, particularly his own testimony, indicated that claimant's condition progressively worsened over time. Yet, when Dr. Rardin examined claimant shortly after the expiration of his insured status, he recommended only conservative treatment for claimant's osteoarthritis, did not find that claimant was disabled, and he did not state that claimant was depressed or nervous. Thus, the ALJ could properly conclude that claimant's condition worsened significantly after the expiration of his insured status.
 
 
 45
 Finally, claimant argues that the district court erred in evaluating his impairments under the listing of impairments in 20 C.F.R. Part 404, Subpart P. Claimant specifically refers to two listings, Section 1.05 of Appendix I, Subpart P, Appellant's Brief at 16, 33; and Section 12.04 of Appendix I, Subpart P, Appellant's Brief at 27, 33.
 
 
 46
 Section 1.05 provides in relevant part that a claimant will be considered disabled if he has,
 
 Disorders of the spine:
 
 47
 A. Arthritis manifested by ankylosis or fixation of the cervical or dorsolumbar spine at [thirty degrees] or more of flexion measured from the neutral position, with X-ray evidence of:
 
 
 48
 1. Calcification of the anterior and lateral ligaments; or
 
 
 49
 2. Bilateral ankylosis of the sacroiliac joints with abnormal apophyseal articulations; or
 
 B. Osteoporosis, ...; or
 
 50
 C. Other vertebrogenic disorders (e.g., herniated nucleus puplosis, spinal stenosis)....
 
 
 51
 20 C.F.R., Part 404, Subpart P, Appendix 1, Sec. 1.05.
 
 
 52
 In this case, although claimant has been diagnosed as having osteoarthritis of the cervical spine, he has failed to present any evidence that meets or equals section 1.05. Specifically, he has presented no evidence of osteoporosis, vertebrogenic disorders, or ankylosis of the cervical spine.
 
 
 53
 Section 12.04 provides in relevant part that a claimant will be considered disabled if he has various affective disorders. However, although claimant submitted evidence showing that he satisfied the listing in Sec. 12.04 at the time of the administrative hearing, there is no evidence in the record that would have satisfied Sec. 12.04 prior to the expiration of his insured status.
 
 
 54
 Therefore, we conclude that substantial evidence supports the ALJ's finding that claimant Byrd did not have any limitations which would have precluded him from performing his past relevant work as a package store operator on or before December 31, 1990. Accordingly, the district court properly granted summary judgment in favor of the Secretary.
 
 III.
 
 55
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Although both Drs. Eden and Riaz submitted letters, after the ALJ issued his decision, stating that they believed that claimant's emotional difficulties existed well before December 31, 1990, neither psychiatrist opined that claimant was disabled based upon his emotional difficulties before December 31, 1990. Further, the ALJ obviously was not able to consider this evidence as part of his decision. However, the Appeals Council considered these letters and rejected them as a basis for reversing the ALJ's decision. R. 7