Patrcia J. GAFFNEY, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 00–10336–BC.

United States District Court, E.D. Michigan, Northern Division.

July 21, 2003.

Donald T. Popielarz, Smith & Popielarz, Saginaw, MI, for Plaintiff.

Geneva S. Halliday, United States Attorney's Office, Detroit, MI, for Defendant.

## OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION TO REMAND, AND REMANDING FOR FURTHER PROCEEDINGS

LAWSON, District Judge.

The plaintiff filed the present action on September 8, 2000 seeking review of the Commissioner's decision denying the plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment seeking reversal of the Commissioner's decision and an immediate award of benefits. The defendant filed a motion to remand for further proceedings, to which the plaintiff responded.

Magistrate Judge Binder filed a Report and Recommendation on March 14, 2001 recommending that the plaintiff's motion for summary judgment be denied, the defendant's motion to remand be denied, and the findings of the Commissioner be affirmed. The plaintiff filed timely objections to the recommendation to which the defendant responded. The plaintiff replied to the defendant's response and this matter is now before the Court.

The Court has reviewed the file, the Report and Recommendation, the plaintiff's objections and the defendant's reply thereto, and has made a *de novo* review of the administrative record in light of the parties' submissions. The plaintiff's objection focuses on the Magistrate Judge's suggestion that substantial evidence supports the Administrative Law Judge's determination that the plaintiff's impairments resulting from diffuse muscle pain, especially in her low back, shoulders, wrists and thighs, were not "severe" within the meaning of the Social Security Act, and the Magistrate Judge's complete failure to address the application of Social Security Ruling (SSR) 99–2p, which sets out the criteria to be used when chronic fatigue syndrome or fibromyalgia has been diagnosed. The Commissioner, in response, agrees that substantial evidence does not support the Administrative Law Judge's finding, but disputes the plaintiff's claim that the matter should be remanded for an award of benefits. Rather, the defendant argues that the matter should be remanded for further proceedings and additional fact finding.

The plaintiff has completed advanced education through nursing school, and has worked as a registered nurse for several years up until May 15, 1996. She filed a claim for disability insurance benefits on November 25, 1996, when she was forty-five years old, alleging that she became

unable to work on her last day of employment as a result of diffuse muscle and joint pain. Her claim was denied initially and the denial was upheld on reconsideration. The plaintiff then appeared before Administrate Law Judge (ALJ) Dennis L. Runyan on August 6, 1998, with her attorney, for an administrative hearing. ALJ Runyan filed a written decision on September 25, 1998 denying benefits because he found that the plaintiff was not disabled. The ALJ reached this conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520. The ALJ concluded that the plaintiff had not engaged in substantial gainful activity since May 15, 1996 (step one); and that the plaintiff's impairments consisting of fatigue, muscle spasms, and pain in the back, legs, neck and shoulders, were not "severe" within the meaning of the Social Security Act (step two). Because the ALJ found against the plaintiff at step two, he did not complete the remaining steps of the sequential analysis.

After the Appeals Counsel denied the plaintiff's request for review, the plaintiff filed the present matter in this Court.

■ The standard of review of an ALJ's decision is deferential, and the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence.

Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984) (internal quotes and citations omitted). *See also Laskowski v. Apfel*, 100 F.Supp.2d 474, 482 (E.D.Mich.2000). If the Commissioner's determination is not supported by substantial evidence on the whole record, the administrative decision must be reversed and the case remanded for further action. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242–43 (6th Cir.2002).

■ The step-two burden of establishing a "severe" impairment has been characterized in this circuit as *"de minimis."* See *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir.1986). The Commissioner states that an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... [u]nderstanding, carrying out, and remembering simple instructions, [and][u]se of judgment." 20 C.F.R. § 404.1521. Thus, in *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685 (6th Cir.1985), the Court of Appeals held that an impairment qualifies as "non-severe" only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Id.* at 691–92. The prevailing view, then, is that only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).

Under those circumstances, the Court of Appeals has found that substantial evi-

dence supports a finding of no severe impairment. *See Higgs*, 880 F.2d at 863. The *Higgs* court acknowledged that the application of the requirement to establish "severity" is quite "lenient," but nonetheless observed that "Congress has approved the threshold dismissal of claims obviously lacking medical merit," and that "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 862–63.

In this case, the medical records indicate that the plaintiff has treated with various physicians since 1996 for several symptoms including weakness, sleep difficulties, leg spasms, and incontinence. She also complained of decreased short term memory, and she had a significant history of alcoholism. Imaging studies of her spine were essentially normal, as were other clinical studies, and the plaintiff's symptoms waxed and waned in intensity. She did consistently complain, however, that she suffered from leg pain, back pain, numbness, and pain in her muscles and joints. In August 1996, the plaintiff was seen by Dr. Barbara Jahnke, who had diagnosed arthralgias and myalgias of nonspecific etiology. At one point, Dr. Jahnke noted that there were no tender trigger points that suggested fibromyalgia.

However, the plaintiff began seeing Dr. Ruth A. Walkotten regularly in 1997, and had seen her approximately every sixty days over the period of one year at the time of the administrative hearing. Dr. Walkotten diagnosed the plaintiff as having chronic fatigue and immune dysfunction syndrome, fibromyalgia, hypertension, allergies, colitis, recurrent herpes, and chronic back pain. She noted, by history, that the plaintiff's symptoms had been ongoing since 1978. In responding to a functional capacity questionnaire, Dr. Walkotten found the following clinical man-

ifestations: abnormal lymph nodes in the cervical, clavicular, axillary, and inguinal regions; crimson crescents; liver and spleen tenderness with palpations; and tender fibromyalgia trigger points. She stated that the plaintiff exhibited symptoms consisting of multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, irritable bowel syndrome, and temporomandibular joint dysfunction. She also exhibited numbness and tingling, breathlessness, some signs of depression, and mitral valve prolapse. She also showed signs of carpal tunnel syndrome and chronic fatigue syndrome. In the opinion of Dr. Walkotten, the plaintiff was not a malingerer. Dr. Walkotten opined that the plaintiff's pain frequently interfered with her ability to concentrate, she exhibited signs of drowsiness, and she could sit only thirty minutes continuously at one time and stand fifteen minutes. The plaintiff could only stand and walk for less than two hours in an eight-hour day, and, as a result, Dr. Walkotten stated that the plaintiff was unable to work.

The Magistrate Judge parroted the ALJ's observation that the plaintiff's complaints of pain were not corroborated by any clinical findings. The medical records, a portion of which are summarized above, plainly undermine this determination.

Fibromyalgia has been said to constitute a diagnosis by limitation, *see Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–18 (6th Cir.1988) ("As set forth in the two medical journal articles . . . fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. . . . [I]t is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients."). However, the Secretary has noted that

chronic fatigue syndrome and fibromyalgia are medically determinable and that the presence of certain symptoms, including the presence of focal trigger points, may be sufficient to establish the diagnosis. *See* Social Security Ruling (SSR) 99–2p ("CFS [chronic fatigue syndrome] is a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity. The current case criteria for CFS, developed by an international group convened by the Centers for Disease Control and Prevention (CDC) as an identification tool and research definition, include a requirement for four or more of a specified list of symptoms. These constitute a patient's complaints as reported to a provider of treatment. However ... [d]isability may not be established on the basis of an individual's statement of symptoms alone."). According to SSR 99–2p, the manifestations of fibromyalgia and CFS are:

> [T]he presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset (i.e., has not been lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. Additionally, the current CDC definition of CFS requires the concurrence of 4 or more of the following symptoms, all of which must have persisted or recurred during 6 or more consecutive months of illness and must not have pre-dated the fatigue:
> Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;
> Sore throat;
> Tender cervical or axillary lymph nodes;
> Muscle pain;
> Multi-joint pain without joint swelling or redness;
> Headaches of a new type, pattern, or severity;
> Unrefreshing sleep; and
> Postexertional malaise lasting more than 24 hours.

Within these parameters, an individual with CFS can also exhibit a wide range of other manifestations, such as muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), orthostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety).

The Ruling also addresses the requirement of Sections 223(d)(3) and 1613(a)(3)(D) of the Social Security Act and 20 C.F.R. §§ 404.1508, 416.908, that evidence of an impairment must include objective clinical or laboratory manifestations.

> For purposes of Social Security disability evaluation, one or more of the following medical signs clinically documented over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFS:
> Palpably swollen or tender lymph nodes on physical examination;
> Nonexudative pharyngitis;
> Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or,
> Any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record.

SSR 99–2p (footnote omitted). The Ruling also recognizes that at the present time, there are no laboratory findings that are accepted as confirmatory of CFS. However, the following findings will be sufficient, although not required, to establish a medically determinable impairment under the Act:

An elevated antibody titer to Epstein–Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640;

An abnormal magnetic resonance imaging (MRI) brain scan;

Neurally mediated hypotension as shown by tilt table testing or another clinically accepted form of testing; or,

Any other laboratory findings that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record; for example, an abnormal exercise stress test or abnormal sleep studies, appropriately evaluated and consistent with the other evidence in the case record.

*Ibid.*

■ In this case, the ALJ and the Magistrate Judge failed to apply, or even make reference to, SSR 99–2p. Had they done so, they would have determined that there was clinical correlation for the plaintiff's complaints of chronic fatigue and muscle weakness, and that the *de minimis* step-two burden had been easily met by the plaintiff. For these reasons, the Court reverses the Commissioner's decision that the plaintiff was not disabled.

Once the determination has been made that the Commissioner's decision is not supported by substantial evidence, the Court must decide whether further fact-finding is required. "[I]f all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits," this Court may remand for an award of benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). *See also Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985) ("In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.").

Because the sequential analysis stopped at step two, there has been no resolution in this case as to the degree to which the plaintiff's severe impairments affect her residual functional capacity or her ability to perform work. These factual determinations must be made by the Commissioner in the first instance. Because there is additional fact finding required, the matter may not be remanded for an award of benefits, and must be remanded for further proceedings.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation is **REJECTED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 9] is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that the defendant's motion to remand [dkt # 10] is **GRANTED.** The findings of the Commissioner are **REVERSED,** and the matter is **REMANDED** to the Social Security Commission for further proceedings.