**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0858n.06
Filed: December 14, 2007

**No. 07-1385**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHARLES J. DESPINS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

**Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.**[*]

**ROGERS, Circuit Judge.** After the Commissioner of Social Security denied plaintiff's application for Social Security Disability Benefits, plaintiff filed for review in federal court. Because the Commissioner's decision is supported by substantial evidence, we affirm.

**I.**

Plaintiff Charles J. Despins is a 66 year-old male who has been retired since 1996. Prior to retirement, Despins worked for thirty-seven years at Kraft Foods, formerly Post Cereal, in Battle Creek, Michigan. During his tenure at Kraft, Despins worked primarily as a semi-truck driver and Class A mechanic.

---

[*]The Honorable William O. Bertelsman, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

**A.     Proceedings Below**

Though Despins retired in 1996, he filed for Social Security Disability Insurance Benefits on February 25, 2003. The Social Security Administration denied both Despins' initial application for benefits and his request for reconsideration. Thereafter, Despins requested an administrative hearing. On September 29, 2004, an Administrative Law Judge ("ALJ") held a hearing in Cookeville, Tennessee. On January 25, 2005, the ALJ issued a decision denying Despins' claim. The ALJ concluded that: (1) Despins' insured status lapsed on December 31, 2001; and (2) prior to that date, Despins did not have an impairment or impairments so "severe" that he was significantly limited from performing basic work activities. The ALJ's decision became the final decision of the Commissioner on January 18, 2006, when the Appeals Council declined Despins' request for review.

On March 3, 2006, Despins filed for review of the Commissioner's decision in federal district court pursuant to 42 U.S.C. § 405(g). On January 25, 2007, a magistrate recommended that the district court affirm the Commissioner's decision. The magistrate concluded that the ALJ's decision was supported by substantial evidence because the administrative record contained no evidence that Despins was significantly limited by his medical impairments prior to December 31, 2001. On March 5, 2007, the district court adopted the findings of the magistrate and affirmed the Commissioner's decision.

**B.       Despins' Medical History**

In his application for benefits, Despins listed a disability onset date of July 28, 1998. Despins claimed that his ability to work became significantly limited on that date as a result of heart problems, tremors, poor eyesight, and loss of hearing. The following is a summary of Despins' medical history as reflected in the administrative record.

1.       Medical History Pre-December 31, 2001

Prior to December 31, 2001, Despins received treatment for a back fracture in 1965, colon cancer in 1983, and meningitis and giardia in 1983. Despins also received treatment for carcinoma on his left cheek in 1994, and his medical records indicate a history of kidney stone removal, hypothyroidism, and trauma to his left wrist. In April 1997, Despins underwent a colonoscopy that yielded no evidence of any lesion or polyp. That same month, an echocardiogram revealed that Despins suffered from a mild to moderate degree of aortic stenosis, a condition whereby a diseased aortic valve impedes the flow of blood through the heart. *See, e.g.*, National Institutes of Health, National Library of Medicine, Aortic Stenosis, http://www.nlm.nih.gov/medlineplus/ency/article/ 000178.htm (last visited Dec. 7, 2007).

On July 9, 1998, Despins was admitted to St. Thomas Hospital in Nashville, Tennessee, as a result of the aortic stenosis diagnosed in 1997. Despins reported to his doctor that he was "able

to do activities of daily living without shortness of breath," but became very short of breath after any type of strenuous exertion. On July 28, 1998, Despins underwent surgery to treat both the aortic stenosis and an ascending aortic aneurysm. The surgery, performed by Dr. Michael Petracek, consisted of aortic valve and root replacement. Dr. Petracek reported that Despins tolerated the procedure well and experienced some intermittent post-operative atrial fibrillation. Despins remained in the hospital for seven post-operative days and was discharged on August 4, 1998. Over the next few years, Despins participated in a series of follow-up examinations and hospital visits.

On August 10, 1998, Dr. Thomas Johnston, Despins' cardiologist, noted that Despins complained of tightness in his chest. Nevertheless, Dr. Johnston reported that Despins seemed to be "doing well" and instructed Despins to "increase his activity level." On August 11, 1998, Despins was admitted to the hospital for volume overload and an irregular heartbeat. Dr. Johnston reported that Despins was "much better" by the next morning and Despins was later discharged in "good condition." At an examination on August 14, 1998, Despins reported swelling and pain in his left leg. Dr. Johnston noted evidence of volume overload and increased Despins' dosage for various prescription medications. On August 18, 1998, Despins reported "feeling a lot better" and that he was no longer experiencing heart palpitations. Thereafter, Despins' visits to the hospital became less frequent.

In September 1998, Dr. Johnston reported that Despins was "much improved" and recovering well from the surgery. In October 1998, Despins was again admitted to the hospital. Despins had "gotten to the point where he could walk a mile until about 3-4 weeks" before the admission, but

began experiencing increased shortness of breath. Dr. Johnston diagnosed Despins with bilateral pleural effusions and ascites. Despins received treatment for his condition and was discharged five days later in "good condition." In a follow-up visit later that month, Dr. Johnston noted that Despins "has been doing much better" and reported that Despins could "walk a mile." In December 1998, Dr. Johnston noted that Despins complained of constipation and decreased urine output, but otherwise seemed to be "doing very well" and was "walking as far as he wants to walk." Later that month, Dr. Petracek examined Despins and noted that Despins' cardiac exam was normal. During the same examination, Dr. Petracek reported that Despins suffered from a left groin lymphocele that would periodically swell up, causing "fairly severe" pain and numbness in Despins' left leg. Despins underwent an excision of the lymphocele and Dr. Petracek noted that Despins tolerated the procedure well. Despins was discharged the same day.

In March 1999, Dr. Johnston reported that Despins had trouble with volume overload but that, in his opinion, Despins was "doing well." In May 1999, Dr. Johnston reported that Despins continued to be volume overloaded and suffered from increased fluid retention and dizziness. Dr. Johnston prescribed additional medication for the volume overload and, in July 1999, Despins reported to Dr. Johnston that he was "feeling good." Dr. Johnston noted that Despins' shortness of breath had improved and reported that Despins was "doing well." In August 1999, Despins complained of heart palpitations. Dr. Johnston discussed various treatment options and noted that it might be necessary to restart Despins on a medication called Rythmol. In November 1999, Dr. Johnston again noted that Despins was "feeling well."

In January 2000, Dr. Johnston reported that Despins was "doing very well" and "did very well" on a recent cruise to the Caribbean. In May 2000, Dr. Johnston reported that Despins occasionally had chest discomfort, but that, otherwise, Despins was "doing very well." In October 2000, Dr. Johnson reported that Despins' volume overload had gotten better and that Despins was walking two miles per day. He noted that Despins was "doing very well." That same month, Dr. Jennifer Lee, Despins' general physician, reported that Despins "really has no problems although he is having some vague chest wall discomfort." In February 2001, Dr. Lee noted that Despins was "doing fairly well." In April 2001, Dr. Johnston wrote to Dr. Lee that Despins "continues to improve every time I see him" and that Despins had only minimal problems with fluid overload. Dr. Johnston also reported that he believed Despins was "doing very well." In November 2001, Dr. Johnston again reported to Dr. Lee that Despins was "doing very well."

In addition to his heart condition, the record indicates that Despins suffered from benign essential tremor prior to December 31, 2001. On August 3, 1998, Dr. Michael Kaminski, Despins' neurologist, noted that Despins had a history of benign essential tremor since early adulthood. Dr. Kaminski reported that Despins' tremor was present with movement and disappeared with rest. Despins had not previously been on medication for the tremor and Dr. Kaminski described Despins' gait as "cautious but stable." At the administrative hearing, Despins testified that the tremor was not "as severe [in 1998] as [it is] now," but that the tremor was severe enough to prevent him from putting nuts and bolts together. Despins also testified that the tremor made it difficult to sign his

name and created difficulty with his gait. Mrs. Despins testified that, by 1996, the tremor was severe enough that it interfered with Despins' ability to do simple tasks around the house.

Medical records do not indicate that Despins received medication for his tremor prior to December 31, 2001. Dr. Kaminski's report of August 3, 1998 indicates that Despins was "started on Tenormin" and that the course of Tenormin treatment would be monitored before other medications were added. However, Despins' medical records between August 3, 1998 and November 12, 2002 do not indicate that Despins took Tenormin or any other medication to treat his tremor. At the administrative hearing, Despins did not refer to a tremor medication when the ALJ questioned him about the medications he took in 1998. Despins testified that he was not treated for tremors in 1998 because doctors were busy addressing his heart problems. Mrs. Despins testified that Despins was not placed on tremor medication in the past because of conflicts with his heart medication. Despins' medical records do not shed any light on a conflict between his heart medication and tremor medications.

Finally, evidence in the record indicates that Despins received medical treatment for basal cell carcinoma and suffered from acute hearing loss prior to December 31, 2001. In July 1998, Dr. Petracek noted that Despins suffered from severely decreasing hearing in his right ear and moderate decreased hearing in his left ear. In August 1998, Dr. Kaminski reported diminished hearing on Despins' right side. The record does not indicate the extent to which Despins received treatment for the hearing loss. In September 2000, Despins underwent micrographic surgery to remove the carcinoma from his left cheek.

2.        Medical History Post-December 31, 2001

The administrative record contains the following evidence of Despins' medical history after December 31, 2001.  With respect to Despins' heart condition, Dr. Johnston examined Despins in February 2002 and concluded that Despins "has been doing fairly well" despite fleeting episodes of chest pain.  In May 2002, Dr. Johnston concluded that Despins was "doing very well."  In November 2002, Dr. Johnston wrote to Dr. Lee that Despins "has been doing relatively well except for edema on and off."  In May 2003, Dr. Johnston reported that Despins was "doing well from a heart standpoint."  In July 2003, Despins complained of chest discomfort.  A week later, Dr. Johnston noted that Despins had no recurrent episodes of the chest pain and that, in his opinion, Despins was doing quite well overall.  In August 2003, Dr. Johnston reported that Despins complained of fatigue but seemed to be doing "better" overall.  In February 2004, Dr. Johnston noted that Despins was "doing well from a cardiac standpoint."  In August 2004, Dr. Johnston reported that Despins had "been feeling worse than before."  Despins was experiencing more palpitations, some pedal edema, and chest pain.

Regarding Despins' tremor, Dr. Kaminski noted in November 2002 that Despins "has been somewhat limited by his essential tremor."  Dr. Kaminski reported that Despins' motor power was good and his gait was stable, and placed Despins on Primidone to treat the tremor.  In May 2003, Dr. Kaminski reported a head nodding tremor and moderate kinetic and action tremor.  Despins remained on Primidone.  In August 2003, Dr. Kaminski reported that Despins' tremor was persistent despite the Primidone and that Despins "remain[ed] somewhat unsteady afoot."  In August 2004, Dr.

Kaminski noted that Despins had discontinued use of Primidone and continued to feel more unsteady afoot.

In addition to his heart and tremor troubles, Despins reported problems with his vision in May 2002. Despins had experienced vision loss to the point where he could "only make out large shapes or shadows." Thereafter, Dr. Wayne Cornblath diagnosed Despins with a bilateral retrobulbar optic neuritis. After treatment, Despins' vision improved notably over the next few months and, by August 2002, Dr. Cornblath characterized Despins' recovery as "excellent." The record reflects that Despins also visited Dr. James Keller for medical care related to his vision in 2002 and 2003.

Finally, in June 2002, Despins underwent a colonoscopy that yielded no abnormalities. Despins also received treatment for lesions and warts in April 2002, for back and hip pain in March and November 2002, and for foot pain in August 2002, October 2003, and April 2004.

**II.**

Because the ALJ applied the correct legal standards and issued a decision that is supported by substantial evidence, we affirm. *See* 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Although the administrative record indicates that Despins suffered from medically determinable impairments prior to December 31, 2001, substantial evidence in the record supports the conclusion that Despins was not significantly limited by those impairments for purposes of Social Security Disability Benefits.

Disability claims under the Social Security Act ("Act") are evaluated using a five-step sequential process. *See generally* 20 C.F.R. § 404.1520.[1] If, at any step during the process, it is determined that the claimant is or is not disabled, the process is terminated. 20 C.F.R. § 404.1520(a)(4). Despins argues that the ALJ prematurely terminated the five-step process at step two after determining that Despins did not suffer from a "severe" impairment. That determination, Despins contends, is not supported by substantial evidence.

It is true that this court has characterized step two of the disability determination process as a "*de minimis* hurdle." *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* Nevertheless, a claim may be dismissed at step two if it is determined that the claim is "'totally groundless' solely from a medical

———————————————

[1]The process is described in *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

(citations omitted).

standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 n.1 (6th

Cir. 1985)).  To surmount the step two hurdle, the applicant bears the ultimate burden of establishing

that the administrative record contains objective medical evidence suggesting that the applicant was

"disabled," as defined by the Act, on or prior to the date that the applicant was last insured.  *See id.*

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations interpret § 423(d)(1)(A) to

require the existence of a "severe" impairment—that is, "any impairment or combination of

impairments which significantly limits [the claimant's] ability to do basic work activities."  20

C.F.R. § 404.1520(c).[2]

Here, the ALJ concluded that, prior to December 31, 2001, the date on which Despins was

last insured, *see* 42 U.S.C. § 423(a) & (c)(1); 20 C.F.R. § 404.101, Despins did not suffer from a

"severe" impairment as defined in 20 C.F.R. § 404.1520(c).  After considering the medical evidence

in the record and the testimony of Despins and his wife, the ALJ acknowledged that Despins had

suffered from various medically determinable impairments, including aortic stenosis, aortic valve

---

[2]Basic work activities are defined in the Social Security regulations as "the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).

and root replacement, hypothyroidism, benign essential tremor, and residuals of colon cancer. The ALJ concluded, however, that Despins' medical records failed to establish that those impairments significantly limited Despins' ability to perform basic work activities. The ALJ noted that the medical records showed no sustained use of medication or treatment for Despins' tremor disorder between July 1998 and December 31, 2001. The ALJ determined that medical records indicated that by October 1998, Despins acknowledged that he was walking a mile per day and, by October 2000, Despins reported walking two miles per day. The ALJ also noted that Despins' doctors did not describe any work-related limitations attributable to his tremor or heart condition. Additionally, the ALJ concluded that the medical evidence did not support a finding that Despins' hearing loss or vision problems supported a finding of a "severe" impairment on or prior to December 31, 2001.

The record indicates that the ALJ's decision is supported by substantial evidence. To be sure, Despins suffered from a host of medical impairments prior to December 31, 2001. The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time. *Cf. Higgs*, 880 F.2d at 863; *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). We have previously noted, albeit in an unpublished decision, that "[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (citing *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988); *Maloney v. Apfel*, No. 99-3081, 2000 WL 4207000 (6th Cir. Apr. 14, 2000); *Foster v. Sec'y of*

*Health & Human Servs.*, No. 88-1644, 1990 WL 41835 (6th Cir. Apr. 11, 1990)).  Here, Despins underwent a serious heart procedure in July 1998.  But the record indicates that between October 1998 and October 2000, Despins reported that he was walking a mile per day, "as far as he wants to walk," and two miles per day.  Despins had varying problems with fluid overload and intermittent chest pain and palpitations during the relevant time period, but the medical evidence in the record does not indicate that those problems limited Despins' ability to perform basic work activities.  In fact, as the ALJ noted, the administrative record contains no medical evidence indicating work-related limitations attributable to his heart condition.

The record also indicates that Despins suffered from a progressive benign essential tremor prior to December 31, 2001.  At the administrative hearing, Despins and his wife testified that the tremor impaired his ability to put nuts and bolts together, sign his name, and perform tasks around the house.  However, the administrative record contains no medical evidence that the tremor caused work-related limitations or that Despins received medication or significant treatment for the tremor prior to November 2002.  Although Despins and his wife testified that Despins was not treated for the tremor in 1998 because tremor medication would have conflicted with Despins' heart medication, Despins' extensive medical records do not mention such a conflict, and no other objective medical evidence in the record addresses this issue.  Moreover, as late as November 2002, Dr. Kaminski assessed Despins' motor power as good and his gait as stable.  Although Dr. Kaminski also noted in November 2002 that Despins was "somewhat limited by his essential tremor," this fails to establish a limitation prior to December 31, 2001.

Finally, the record indicates that Despins suffered from acute hearing loss in his right ear prior to December 31, 2001. However, as the ALJ explained, the record contains no evidence suggesting that this impairment significantly limited Despins' ability to perform basic work activities. The record does not reflect that Despins received treatment for hearing loss, nor does the record shed light on any limitation Despins experienced due to his hearing impairment. Similarly, Despins did not report a loss of vision until May 2002. The vision impairment therefore cannot be used to establish disability prior to December 31, 2001.

In sum, the record indicates that Despins has indeed suffered from various medical impairments throughout his lifetime. However, there is no objective medical evidence in the record sufficient to overturn the Commissioner's determination that those impairments did not significantly limit his ability to perform basic work activities prior to December 31, 2001.

**III.**

Despins asserts on appeal various other grounds for overturning the ALJ's decision. None is persuasive. First, Despins argues that the "entire [administrative] process was devoid of fundamental fairness" because the ALJ improperly truncated the hearing and "cherry picked" and "hop scotched" through the record. Despins also suggests that the ALJ failed to consider his impairments in combination. There is no evidence in the record, however, that Despins did not receive a full or fair hearing. The record indicates that the ALJ did not limit Despins' counsel from asking questions, calling witnesses, or otherwise introducing evidence relevant to the disability

determination. Further, the ALJ's decision reflects a comprehensive examination of Despins' medical impairments and explicitly concludes that Despins "did not have any impairment or impairments that significantly limited his ability to perform basic work related activities." That the ALJ may have discussed Despins' impairments individually "hardly suggests that the totality of the record was not considered." *See Gooch v. Sec'y of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987).

Second, Despins argues that the ALJ failed to follow Social Security regulations by disregarding "the regulations and procedures dealing with 20 C.F.R. § 404.1520(c) and the determination of sever[e] impairments." His argument has two components. Despins initially argues that the ALJ should not have terminated the process at step two because the record supports the conclusion that Despins suffered from "severe" impairments. This argument fails because, as discussed above, substantial evidence supports the ALJ's decision at step two. Next, Despins argues that the "Commissioner should provide a more comprehensive review of the evidence and a well reasoned opinion" and "must conduct a more detailed evaluation of the medical documentation." This argument is also unavailing. The ALJ's opinion reflects a comprehensive examination of the record and properly follows the pertinent law and regulations.

Lastly, Despins argues that the decision of the ALJ contains two significant factual errors. Despins first argues that the ALJ misinterpreted Mrs. Despins' testimony regarding Despins' return to work after his pre-1996 medical problems. But even if the ALJ's interpretation of Mrs. Despins' testimony was incorrect, the ALJ did not rely in formulating his decision on the timing of Despins'

return to work after his pre-1996 medical problems. Because the ALJ would have arrived at the same disability determination regardless of any misinterpretation of the testimony, any error in this regard was harmless. *Cf. Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). Despins also argues that the ALJ minimized Despins' tremor problem by pointing out that Despins did not take medication or seek treatment for his tremor after 1998. This argument also lacks merit. The ALJ properly considered as relevant the fact that Despins' medical records did not indicate that Despins received significant treatment or medication for his tremor during the relevant time period.

**IV.**

For the foregoing reasons, the judgment of the district court is affirmed.