NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0072n.06

FILED
Jan 23, 2015
DEBORAH S. HUNT, Clerk

No. 14-5463

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRANK SEELEY, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges

SUHRHEINRICH, Circuit Judge

After the Commissioner of Social Security ("the Commissioner") denied Frank Seeley, Jr.'s ("Claimant") application for Social Security Disability Benefits, Claimant filed for review in federal court. Because the Commissioner's decision is supported by substantial evidence, we affirm.

## I.

### A. Proceedings Below

Claimant filed for Social Security Disability Insurance Benefits ("DIB") on November 19, 2008. The Social Security Administration denied both Claimant's initial application and his request for reconsideration. Claimant then requested an administrative hearing. An Administrative Law Judge ("ALJ") held a hearing on March 24, 2011. The ALJ issued a

decision denying Claimant's claim on May 16, 2013. The ALJ concluded that (1) Claimant's insured status lapsed on June 30, 2001 (the date last insured, or "DLI"); and (2) Claimant did not have a "severe" impairment or combination of impairments that precluded him from performing basic work activities prior to that date. The ALJ's decision became the final decision of the Commissioner on May 16, 2013, when the Appeals Council denied Claimant's request for review.

## B. Claimant's Medical History

In his application for benefits, Claimant listed a disability onset date of June 2, 2000. Claimant stated that his disability arose from diabetes, foot ulcers, chronic back pain, anxiety, depression, high blood pressure, and high cholesterol.

### 1. Medical History Before DLI

There are only two pieces of medical evidence in the record predating Claimant's DLI. The first piece is a May 30, 1995 treatment note by Jim Ellis, M.D., interpreting an x-ray taken of Claimant's left hand. Dr. Ellis indicated that while Claimant's left index finger was swollen, there appeared to be no fracture or trauma. The second piece is a December 30, 2000 treatment note by Jackie Taylor, M.D. The note stated that Claimant had a history of hypertension but "no other problems." Dr. Taylor diagnosed Claimant with hypertension, but Claimant's physical examination revealed no other abnormal findings.

### 2. Medical History After DLI

On July 5, 2001, six days after the DLI, Claimant visited Dr. Taylor for re-evaluation because he was "not feeling well at all" and was "very tired, fatigued." Claimant also experienced increased thirst and urination. Dr. Taylor diagnosed Claimant with hypertension, fatigue, polyuria, polydipsia, and weight loss. Her examination of Claimant revealed no

abnormal results. Claimant also complained of being chronically depressed, so Dr. Taylor prescribed Celexa. On July 19, 2001, Claimant visited Dr. Taylor, "complaining of blurred vision and to follow up on his diabetes."[1] Dr. Taylor reported that Claimant was "doing much better" and said "that he feels overall much better than he did the last time he was here." Dr. Taylor diagnosed Claimant with diabetes that was under control and with visual changes.

On October 10, 2001, Claimant visited Dr. Taylor, complaining that his nerves were "shot," that he was eating "too much," and that he was "under a lot of stress just from his illness and opening a new business." When Dr. Taylor examined Claimant again on January 11, 2002, she noted that Claimant was "doing pretty well, [but] still having a lot of anxiety and says that if he has to do a detailed task that it makes him very temperamental and he just wants to go off." However, Claimant's physical examination was normal. Dr. Taylor also prescribed Xanax and Zoloft for Claimant's anxiety. When Claimant returned to Dr. Taylor on February 1, 2002, Dr. Taylor noted that the "Zoloft has helped [Claimant] tremendously" and that Claimant was "basically doing well."

In June 2003, Claimant started seeing David M. Larsen, M.D. Claimant visited Dr. Larsen on October 13, 2003, to follow-up on his diabetes. Dr. Larsen noted, "[Claimant] is doing well. No particular problem or difficulty." Dr. Larsen diagnosed Claimant with stable diabetes and hypertension. Claimant then met with Dr. Larsen on November 25, 2003, because Claimant was "going through a lot of stress" and was "increasingly irritable and having trouble over the last month." Dr. Larsen noted that Claimant appeared slow, depressed, and "really

---

[1] Although Dr. Taylor wrote that Claimant came in to "follow up on his diabetes," it should be clarified that Dr. Taylor's previous treatment note did not expressly diagnose Claimant with diabetes, indicate the type of diabetes from which he suffered, or prescribe medicine to treat diabetes. Indeed, nothing in the record expressly stated that Claimant suffered from diabetes until Dr. Taylor diagnosed that condition in her July 19, 2001 treatment note, notwithstanding her language suggesting otherwise.

unkempt." Dr. Larsen diagnosed Claimant with depression and prescribed Effexor. When Claimant returned on December 16, 2003, for a follow-up on his depression, Dr. Larsen wrote that Claimant "doesn't seem like he had improved considerably." Dr. Larsen increased Claimant's depression medication in response. When Claimant visited Dr. Larsen on January 30, 2004, Dr. Larsen wrote, "[Claimant] is doing well. Diabetes has really been doing well, no particular problems or difficulty." On June 4, 2004, Dr. Larsen similarly observed that Claimant "is doing well at this point" and had "[n]o specific problems." Dr. Larsen again wrote that Claimant was "doing well" after a December 3, 2004 evaluation, although Dr. Larsen did note that Claimant complained of "some abdominal wall pain with some cramps in the abdominal area . . . when he is sitting down."

Other than standard evaluations by Dr. Larsen throughout the subsequent years, the record provides no noteworthy treatment notes or medical evaluations between December 2004 and February 2011, when two medical professionals offered opinions suggesting that Claimant was disabled prior to his DLI. On February 1, 2011, Dr. Larsen completed a Medical Source Statement form ("MSS") on behalf of the Social Security Administration, maintaining that Claimant's osteoarthritis and diabetic neuropathy interfered with his ability to perform work-related activities. Dr. Larsen indicated that Claimant could not lift or carry objects heavier than ten pounds, could not stand or walk more than two hours, and needed to alternate standing and sitting every 40 minutes. Dr. Larsen claimed that this disability predated Claimant's DLI, writing "as of 6/1/01" in the top corner of the MSS. David Pickering, Ph.D., examined Claimant's mental health on February 17, 2011. Dr. Pickering wrote that "the disability [Claimant] displays is primarily due to Generalized Anxiety Disorder and Major Depressive Disorder, Recurrent, Severe without Psychotic Features." Claimant "displayed psychomotor

retardation, anxious, inhibited, and constricted affect, and apprehensive, despondent, and depressed mood." Dr. Pickering further opined that Claimant had been unable to consistently hold a job "for about 12 years" and had "significant difficulty being able to interact with others." Dr. Pickering concluded that Claimant's "anxiety and depressive symptoms have increased in severity to the point where they significantly impact his ability to interact with others, and significantly impede his abilities to work." However, while those two opinions alleged the existence of a disability before Claimant's DLI, a review of the record shows no independent medical evidence indicating the existence of disabling impairments during the crucial time before and immediately after the DLI. Indeed, James N. Moore, M.D., a Social Security Disability Determination Services ("DDS") Medical Consultant, reviewed Claimant's medical history and determined that there was "insufficient evidence to assess [a] claim prior to [the] DLI of 6/30/01." Denise P. Bell, M.D., another Social Security medical consultant, reviewed Dr. Moore's opinion and confirmed that Dr. Moore's "determination was substantively and technically correct."

## II.

"The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). Because the ALJ below applied the correct legal standards and issued a decision supported by substantial evidence, we affirm. The administrative record does not support the conclusion that Claimant suffered from a disability prior to his DLI.

Disability Claims under the Social Security Act ("the Act") are evaluated under a five-step analysis:

> [A] claimant must first show that he or she is not engaged in substantial gainful activity. Secondly, the claimant cannot be found disabled absent a demonstration of the existence of a "severe impairment." At the third step, the claimant will be found disabled regardless of other factors if he or she can demonstrate that her impairment meets the 12–month durational requirement and "meets or equals a listed impairment." In the fourth step, when the impairment does not meet or equal a listed impairment, the claimant must prove that he or she cannot perform work done in the past. At the fifth and final step, if the claimant's impairment is so severe that he or she cannot perform past work, then the claimant's age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). If the ALJ finds that the claimant is disabled or not disabled at a particular step, the ALJ will make a decision and will not proceed to the subsequent step. 20 C.F.R. § 404.1520(a)(4). The ALJ below terminated analysis at step two, determining that Claimant did not suffer from a severe impairment before June 30, 2001, the DLI. Claimant contends this decision was not supported by substantial evidence.

Claimant bears the burden of establishing that a disability began before his disability insurance expired on June 30, 2001. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a) and (c) and *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The Social Security regulations interpret "disability" to require the existence of a "severe impairment"—one that "significantly limits [the claimant's] physical or mental ability to do basic work activities" in light of that individual's age, education, and work experience. 20 C.F.R. § 404.1520(c).

The record indicates that the ALJ's decision below is supported by substantial evidence. While Claimant suffered from hypertension prior to his DLI and exhibited symptoms of diabetes as well as depression immediately after his DLI, the "mere existence of those impairments . . . does not establish that [Claimant] was significantly limited from performing basic work activities for a continuous period of time." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (citing *Higgs,* 880 F.2d at 863; *Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988)). "When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (citations omitted). Here, neither the May 1995 x-ray report nor the December 2000 examination note that predated the DLI suggested that Claimant was unable to perform basic work activities. Similarly, the examination note from July 5, 2001, six days after the DLI, did not suggest work-related limitations attributable to hypertension, diabetes, or depression, or a degree of severity otherwise consistent with disability. Accordingly, the ALJ's determination was supported by substantial evidence. *See Higgs*, 880 F.2d at 863 (holding that the lack of objective medical evidence predating the DLI supported a finding of no severe impairment); *see also Despins*, 257 F. App'x at 929-30 (holding that ALJ's decision was supported by substantial evidence when the record did not indicate an inability to perform basic work functions).

Claimant argues that the ALJ below ignored Dr. Larsen's MSS and Dr. Pickering's mental health evaluation, both of which he believes provided substantial evidence of a severe impairment. But those reports were made almost 10 years after the DLI, and there is no evidence that either doctor examined Claimant prior to the DLI. As the ALJ below recognized, Dr.

Pickering's report "did not document any related diagnosis, complaints of symptoms, or corresponding medical treatment for anxiety or depression prior to [Claimant's] DLI." *See also Moon*, 923 at 1182 ("The existence of a medically determinable [mental] impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." (citation omitted)). Consequently, those reports were insufficient to prove a severe impairment in the absence of corroborating evidence that predated the DLI.

Claimant also asserts that the ALJ below erred in determining that the 12 consecutive months of disability all had to take place before the DLI. Claimant misinterprets the ALJ's statement, which was merely paraphrasing the statutory definition of "disability." *See* 42 U.S.C. § 423(d)(1) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous period of not less than 12 months*" (emphasis added)). Nothing in the decision below suggests that the ALJ believed all 12 of those months had to precede the DLI.

In sum, the record indicates that while Claimant may have suffered from medical impairments before his DLI, there is no objective medical evidence sufficient to overturn the ALJ's determination that those impairments were not "severe."

**III.**

Claimant offers various other grounds for overturning the ALJ's decision, but none has merit.

First, Claimant argues that the ALJ below did not give controlling weight to the opinions of Drs. Larsen and Pickering, in violation of 20 C.F.R. § 404.1527, which establishes rules for

evaluating medical opinions of treating physicians. But those opinions "receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *see also* 20 C.F.R. § 404.1527(c)(2). "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as she sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, as the ALJ below articulated, neither the opinion of Dr. Larsen nor that of Dr. Pickering was supported by objective evidence in the record. As explained above, nothing in the record indicated that Claimant was unable to perform basic work functions either before or immediately after the DLI. Thus, the physician opinions alone were insufficient to warrant controlling weight. *See Jones*, 336 F.3d at 477 (holding that an ALJ appropriately disregarded a physician's conclusion when there was no "objective medical evidence" supporting the physician's medical assessment); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (holding that an ALJ has a "sufficiently valid reason not to accept the opinions of a treating medical doctor" when that treating physician's claim is "not . . . supported by detailed, clinical, diagnostic evidence in his reports"). Claimant incorrectly relies on *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), arguing that the ALJ below did not adequately support the decision to give less weight to those opinions. That case is inapposite, however, because the ALJ in *Wilson* did not articulate a good reason for rejecting a treating physician's opinion, merely stating that the treating source's opinion "may be an accurate assessment," but ultimately concluding that it was up to the ALJ to assess the claimant's limitations before the DLI. *Id.* at 545. The Sixth Circuit determined that those statements did not amount to "giving good reasons." *Id.* In contrast, the ALJ below provided clear, legitimate reasons for attributing low weight to the opinions of Drs. Pickering

and Larsen, concluding that neither opinion was supported by objective medical finding predating the DLI or corroborated by the broader record. The ALJ thus followed the relevant regulations when weighing those opinions.

Second, Claimant argues that the ALJ below "failed to develop the record" by neglecting SSR 83-20, 1983 WL 31249 (Jan. 1, 1983), which "directs the ALJ to obtain medical and psychological opinions to aid in the determination of onset in cases of chronic medical or psychological conditions." But Claimant mischaracterizes SSR 83-20, which states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." 1983 WL 31249, at *2. The Ruling goes on to state that "the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id.* at *3. However, SSR 83-20 is "not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). The ALJ in Claimant's case did not find a disability, determining that Claimant lacked a severe impairment or combination of impairments. Thus, "[s]ince there was no impairment or any other impairments or combination thereof, no inquiry into onset date [was] required." *Key*, 109 F.3d at 274.

Finally, Claimant states that the ALJ below erred by failing to evaluate and explain his findings on Claimant's credibility as required by SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p "clarif[ies] when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects[.]" *Id.* at *1. Claimant puts the cart before

the horse. A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529. SSR 96-7p mandates only a credibility determination after a physical or mental impairment has been established *and* that impairment could reasonably be expected to produce the symptoms inhibiting work activities. 1996 WL 374186, at *2; *see also id.* at *3 (noting that the credibility determination occurs "[o]nce the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain or other symptoms has been established").

Here, the ALJ below "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements on 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p." The ALJ examined the Claimant's alleged symptoms, but determined that the evidence predating the DLI did not "contain clinical findings or laboratory evidence of any corresponding impairment-related manifestations that would impose any functional limitations." The ALJ further noted that the "record does not contain any additional documents . . . dated prior to the date last insured (or shortly thereafter) that would impose any functional limitations." *Id.* An "ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1030 (6th Cir.1990). Thus, the ALJ below did not need to make a credibility determination regarding Claimant's subjective account because there was no objective evidence of an underlying physical or mental impairment prior to the DLI that produced the symptoms Claimant alleged in the first place. Claimant invokes *Kalmbach v.*

*Comm'r of Soc. Sec.*, 409 F. App'x 852 (6th Cir. 2011), to support his position, but that case is distinguishable because it pertains to the nature of a specific impairment. *Cf. id.* at 863 (holding that because of the "nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition," an ALJ could not discount claimant's subjective symptoms in favor of objective evidence in the record) (quotation omitted)). Furthermore, whereas the ALJ in *Kalmbach* made an initial finding that the claimant suffered from fibromyalgia and experienced impairing symptoms related to that condition, *id.* at 858, the ALJ below did not find "any clinical findings or laboratory evidence of any corresponding impairment-related manifestations that would impose any functional limitations." As explained above, the record did not indicate any inability to perform work-related functions prior to or immediately after the DLI. Consequently, the ALJ below did not need to render an explicit determination regarding Claimant's credibility.

**IV.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.